UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

PAWANKUMAR JAIN,                                           No. 13-13497 tl7

     Debtor.

UNITED STATES TRUSTEE,

     Plaintiff,

v.                                                                 Adv. No. 14-1020 t

PAWANKUMAR JAIN,

     Defendant.

## **OPINION**

Before the Court is Debtor's motion for summary judgment that the Court exercise its discretion and grant him a chapter 7 discharge. Alternatively, Debtor asks for a judgment on mootness grounds. The Court has reviewed the record, the relevant law, and the parties' submissions. For the reasons stated herein, the motion must be denied.

A.     Facts.

For the purpose of ruling on the motion, the Court finds that the following facts[1] are not in genuine dispute:

Before 2012, Debtor was a licensed medical doctor with an independent neurology practice. By some accounts, he was a highly regarded neurologist. However, after at least four

---

[1] The Court takes judicial notice of its docket in this case, the main bankruptcy case, and the case of *USA v. Jain*, 2:14-cr-01261-RB. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may sua sponte take judicial notice of its docket and of facts that are part of public records).

people in his care died from prescription drug use, he became the target of an investigation by the Drug Enforcement Administration (DEA). In April 2012 the DEA executed a search warrant of his medical practice. Debtor closed his practice in July 2012. In December 2012, the New Mexico Medical Board revoked his medical license.

In August 2013, Dennis Murphy, as personal representative, and Annie-Laurie Coogan, as personal representative, filed wrongful death suits in state court, arising from prescription drug overdose deaths.

On September 5, 2013, Debtor and his wife of 34 years, Annamma Philip, filed a Stipulated Petition for Dissolution of Marriage. A week later, they filed a Stipulated Marital Settlement Agreement (as amended, the "MSA"). Attached to the MSA are two "schedules" reflecting the division of property—one of the parties' sole and separate property, and the other of their community property. The schedules show that Debtor had no sole and separate property while Philip's sole and separate property comprised four LLC's and "all properties" therein (the value of the properties is not reflected in the schedule). As her share of community property, Philip was awarded three parcels of real estate worth $640,000. She also was given all of the community cash (about $719,000). Debtor was awarded the couple's retirement accounts. To equalize the distribution of community assets, Philip was to pay spousal support of $75,000 in payments of $1,000 a month.

Debtor filed this chapter 7 case on October 25, 2013. Clarke Coll was appointed chapter 7 trustee. Debtor's schedules and Statement of Financial Affairs contained some information about his division of property with Philip.

Dennis Murphy and Annie-Laurie Coogan filed the only proofs of claim in the case. Murphy's claim was for $2 million; Coogan's was for $5 million.

On February 18, 2014, the United States Trustee (UST) filed this adversary proceeding, seeking denial of Debtor's discharge. The UST alleged:

12. On March 5, 2012, when the investigation was pending concerning Defendant's medical license and/or DEA registration, Defendant transferred his interest in four pieces of real estate by special warranty deed to an LLC by the name of Sheena & Samat, LLC. . . . the Properties transferred were 2825 Huntington Dr., 530 Monte Vista, 1915 S. Solano, and 1315 Wofford Dr., all located in Las Cruces, NM. The total tax assessor valuation for these properties is $421,800. These properties were purchased by Defendant and his former wife Annamma Philip from 8/27/08 to 1/20/12 and titled in both their names.

13. On August 21, 2013, Defendant transferred title to his 2010 Lexus 600 sedan to himself and his son Samat Jain. Upon information and belief, this vehicle cost approximately $100,000 when Defendant purchased it in 2010 and was worth potentially $57,000 to $60,000 when the title transfer occurred. This vehicle was previously titled in Defendant's name alone. . . .
. . . .
15. On September 5, 2013 [17 days after the first of the two wrongful death lawsuits were filed against him], Defendant and his then wife Annamma Philip filed a Stipulated Petition for Dissolution of Marriage. . . . On September 12, 2013, they entered into a Stipulated Marital Settlement Agreement, which awarded to the wife as separate property unidentified LLC entities 'created by Petitioner's [wife's] 50% of the community interest and 50% of her community labor.'

16. On September 20, 2013, approximately 15 days after the divorce action was filed, a final decree was entered. Defendant and his ex-wife moved to reopen the case on October 17, 2013[,] to make changes to the Marital Settlement Agreement and the case was reopened on October 24, 2013. The Stipulated Amended Martial Settlement Agreement was filed on October 17, 2013[,] and added the names of the LLC entities (including Sheena & Samat LLC) together with all real estate owned by those entities as separate property. The Stipulated Amended Martial Settlement Agreement also re-characterized the 'equalization' payment to Defendant as support.

17. On October 23, 2013, a Second Stipulated Amended Martial Settlement Agreement was filed in the divorce action. The wrongful death claims are not listed as liabilities [in any version of the MSA]. . . .

18. On October 1, 2013, Defendant executed a quitclaim deed transferring his interest in two pieces of real estate to his ex-wife Annamma Philip. These two properties were the residence located 55445 Remington and another property located at 1292 Mission Nuevo Drive, both in Las Cruces. The residence is a four bedroom, 6 bath house with approximately 7000 square feet located on 6.25 acres, built in 2005 during the Defendant's marriage to Annamma Philip. The Dona Ana

County tax assessor valuation for this property is $1,163,700. The other property has a tax valuation of $95,000. These two properties were purchased and titled originally in the names of Defendant and his wife.

19. On October 9, 2013, Defendant executed a quitclaim deed transferring his interest in 2626 Cashmere Court and a parcel described as Section 32, Township 22S, Range 2E, Dona Ana County to his son Samat Jain and his ex-wife Annamma Philip. The 2626 Cashmere Court residence was previously titled jointly in the names of the Defendant, Samat Jain[,] and Annamma Philip. The Cashmere Court property has a tax assessor value of $200,000.

20. On October 1, 2013, Defendant executed a quitclaim deed to his ex-wife for the 134 Cliff property in Ruidoso (Lincoln County). This property had a tax assessor value of $184,386.
. . . .
23. On December 17, 2013[,] the first meeting of creditors was held, at which time the Chapter 7 trustee, Clarke Coll, questioned the Defendant about the accuracy of his schedules and statement of financial affairs.

24. . . . Defendant testified under oath that the information contained in his schedules and statement of financial affairs is true and correct.

25. The Defendant's schedules and statements do not disclose the transfer of 2825 Huntington Dr., 530 Monte Vista, 1915 S. Solano, and 1315 Wofford Dr. (with [a combined] total tax value of $421,800, nor the transfer of the 2010 Lexus[)]
. . . .
26. The Defendant's schedules and statements do not disclose that he transferred four LLC entities to his wife in the quick, stipulated divorce, or that the properties held by those entities are worth at least $1,976,253 (tax assessor values).

27. The Defendant's Statement of Financial Affairs does not disclose the values of the three pieces of community real estate transferred by him to his wife in the quick, stipulated divorce action (over $1.2 million).

28. Defendant failed to disclose in his three versions of the stipulated martial settlement agreement how much cash in the financial accounts was divided in the divorce, and his schedules and statements also fail to disclose this information.

The UST asserts three grounds for the denial of Debtor's discharge: transfer of non-exempt property to his wife and his son immediately before filing bankruptcy (§ 727(a)(2))[2]; false oaths

---

[2] All statutory references are to 11 U.S.C.

or accounts on his bankruptcy schedules and at the § 341 meeting (§ 727(a)(4)); and failure to explain the loss of certain assets (§ 727(a)(5)).

In April 2014, Debtor was indicted on federal charges of unlawfully dispensing and distributing controlled substances and health care fraud. Debtor pleaded nolo contendere. In May 2018 he was sentenced to 108 months in prison and 3 years of supervised release. He also was ordered to pay fines and restitution.

Based on many of the same allegations in the UST's complaint, Coll filed an adversary proceeding on August 15, 2015, against Debtor, Philip, Sheena & Samat, LLC, and Samat Jain, seeking to avoid certain alleged fraudulent transfers. The proceeding was resolved by a settlement agreement among the parties, Murphy, and Coogan. The settlement allowed Coll to pay Murphy's and Coogan's claims (reduced as part of the settlement) in full. Coll filed his chapter 7 trustee's final account and distribution report in the bankruptcy case on January 30, 2019. The case is ready to be closed, pending the outcome of this proceeding.

Debtor makes two arguments in support of his motion.[3] First, Debtor argues that the UST's action is moot because all creditors have been paid. Second, Debtor argues that the Court has discretion to grant him a discharge even if the UST could prevail on its § 727(a) claim. He asks the Court to exercise its discretion and give him a discharge.

B.  Summary Judgment Standards.

Summary judgment is appropriate where "there is no genuine dispute as to any material fact," thereby entitling the moving party to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A dispute is genuine when the evidence is such that a reasonable jury could return a verdict for the

---

[3] Debtor may also have argued in his motion that Coll's settlement barred the UST action under preclusive principles. If so, Debtor abandoned the argument in his reply.

nonmoving party, and a fact is material when it might affect the outcome of the suit under the governing substantive law." *Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (with alterations). "The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998). In ruling on a motion for summary judgment, the Court is required to "view the facts and draw reasonable inferences in the light most favorable to the party opposing the . . . motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007).

C.   Section 727(a).

"Ordinarily, a debtor who requests a bankruptcy discharge will be granted one. However, the expectation is that, to be entitled to discharge, the debtor must deal fairly with creditors and with the court. This obligation is imposed indirectly through a series of objections to discharge set out in Code § 727(a)." *In re Gordon*, 526 B.R. 376, 387-88 (10th Cir. BAP 2015).

In relevant part, § 727 provides:

> (a) The court shall grant the debtor a discharge, unless—
> . . .
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
>    (A) property of the debtor, within one year before the date of the filing of the petition;
> . . . .
> (4) the debtor knowingly and fraudulently, in or in connection with the case—
>    (A) made a false oath or account;
> . . . .
> (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

> (c)(1) The trustee, a creditor, or the United States trustee may object to the granting of a discharge under subsection (a) of this section.

Debtor does not seek summary judgment on the merits of the UST's claims.

D.    <u>Debtor's Mootness Argument</u>.

"[F]ederal courts may hear only 'cases' or 'controversies.'" *In re Lotspeich*, 328 B.R. 209, 216 (10th Cir. BAP 2005) (citing U.S. Const., art. III, § 2, cl. 1). A case that ceases to present a "live controversy with respect to which the court can give meaningful relief" is moot. *Ethredge v. Hail*, 996 F.2d 1173, 1175 (11th Cir. 1993); *accord In re W. Pac. Airlines, Inc.*, 181 F.3d 1191, 1194 (10th Cir. 1999) ("[A] case becomes moot when it becomes impossible for the court to grant any effectual relief whatever to a prevailing party."). Courts do not have jurisdiction over moot cases. *Citizens for Responsible Gov't State Political Action Comm. v. Davidson*, 236 F.3d 1174, 1181–82 (10th Cir. 2000).

Debtor's mootness argument fails for two reasons. First, the grant or denial of a discharge could still have a significant effect on Debtor and his creditors. For example, if a creditor who got notice of Debtor's case did not file a proof of claim, denial of the discharge could allow that creditor to seek collection of the debt. According to Debtor's schedules, there may be at least one such creditor (James Clark, as Guardian Ad Litem for James & Joseph Clark).

Second, discharge complaints brought by the UST protect the integrity of the bankruptcy system by guarding against abuse. *See In re Kallstrom*, 298 B.R. 753, 758 (10th Cir. BAP 2003) ("Restricting the issuance of discharges to honest debtors is important to the legitimacy and integrity of the bankruptcy process"); *In re Stewart*, 201 B.R. 996, 1002 (Bankr. N.D. Okla. 1996) ("The UST is the Federal agency charged with [the] duty of assisting the [b]ankruptcy [c]ourt in supervising and policing the bankruptcy process"). Discharge, a significant privilege, is reserved for honest debtors who abide by their statutory obligations and deal fairly with the court and their

creditors. *In re Taylor*, 190 B.R. 413, 416 (Bankr. D. Colo. 1995) (§ 727 is "the gatekeeper for allowing only honest debtors the extraordinary relief afforded by the Bankruptcy Code" thereby upholding "the integrity and stature of the bankruptcy process"). If the UST's office wishes to pursue this litigation to protect the integrity of the bankruptcy system, it has the right to do so.

Debtor is not entitled to summary judgment on mootness grounds.

E.  <u>Bankruptcy Court Discretion to Grant a Discharge</u>.

Debtor also argues that, regardless of the merits of the UST's claim, the Court should grant his discharge as an exercise of its discretion. Debtor asserts with some justification that he has suffered enough: he lost his medical practice, his medical license, his marriage, and most of his assets, and was sentenced to 108 months in prison. In support of the proposition that the Court has the necessary discretion, Debtor cites *In re Connors*, 273 B.R. 764, 773 (Bankr. S.D. Ill. 2001), which held that "the bankruptcy court has discretion to grant a discharge of debt even if grounds for denial of discharge exist." *See also In re Hacker*, 90 B.R. 994, 997 & n.18 (Bankr. W.D. Mo. 1987) (to the same effect, and citing cases); *see generally In re Wagner*, 527 B.R. 416, 428-29 (10th Cir. BAP 2015) ("A decision whether to grant or deny a discharge pursuant to . . . § 727(a) is in the sound discretion of the bankruptcy court, and a bankruptcy court's denial of discharge is therefore reviewed for abuse of discretion."); *In re Garland*, 417 B.R. 805, 810 (10th Cir. BAP 2009) (same); *In re All Phase Roofing & Constr., LLC*, 2020 WL 5512500, at *5 & n.17 (10th Cir. BAP) (same, citing *Wagner* and *Garland*).

Despite this and other case law, the Court concludes for several reasons that it does not have discretion to grant Debtor a discharge if the UST proves its § 727(a) action at trial. First, the United States Supreme Court has construed § 727(a) as not giving bankruptcy courts such discretion. In *Kontrick v. Ryan*, 540 U.S. 443 (2004), the Supreme Court stated:

> Under § 727(a), the court may not grant a discharge of any debts if the debtor, *inter alia,* (1) is not an individual; (2) has, with intent to defraud a creditor, concealed, transferred, or destroyed property of the estate (A) in the year preceding bankruptcy or (B) during the bankruptcy case; (3) has destroyed books or records; (4) has knowingly (A) given a false oath or account, (B) presented or used a false claim, (C) attempted to obtain money by acting or forbearing to act, or (D) withheld documents relating to the debtor's property or financial affairs; or (5) has failed to explain a loss or deficiency of assets. 11 U.S.C. §§ 727(a)(1)-(5).

*Id.* at 446 n.1. Although the language is dicta, Supreme Court dicta generally must be followed. *See, e.g., Bonidy v. U.S. Postal Serv.*, 790 F.3d 1121, 1125 (10th Cir. 2015) ("[W]e are bound by Supreme Court dicta almost as firmly as by [its] outright holdings").

Second, *Kontrick's* interpretation is correct. The negative-implication canon of statutory construction states that "to express or include one thing implies the exclusion of the other or of the alternative." *See* Scalia & Garner, *Reading Law: The Interpretation of Legal Texts*, p. 107 (2012); *see also In re Vaughan*, 311 B.R. 573, 579 (10th Cir. BAP 2004) (applying the canon, also known as the *expressio unius est exclusio alterius* canon, to § 522(c)). The clear negative implication of § 727(a) is that debtors who come within § 727(a) (1)-(12) do not get a discharge.

Third, construing § 727(a) as giving bankruptcy courts discretion to grant discharges regardless of the enumerated exceptions would lead to absurd results. For example, bankruptcy courts could grant discharges to corporations (despite § 727(a)(1)) and to chapter 7 debtors who received a discharge the year before (despite § 727(a)(8)). Statutes should be construed to avoid unjust or absurd results. *Albrecht v. Herald Co.*, 367 F.2d 517, 525 (8th Cir. 1966), *rev'd on other grounds*, 390 U.S. 145 (1968), citing *In re Chapman*, 166 U.S. 661, 667 (1897); *U.S. v. Wilson*, 503 U.S. 329, 334 (1992) ("absurd results are to be avoided").

Finally, the Court's equitable powers do not exceed the strictures of the Bankruptcy Code. *See Law v. Siegel*, 571 U.S. 415, 421 (2014) ("We have long held that . . . the bankruptcy courts[' equitable powers] must and can only be exercised within the confines of the Bankruptcy Code.")

(internal quotes omitted). Relying on "discretion" to grant a discharge when a § 727(a) exception applies seems contrary to the letter or spirit of *Law v. Siegel*.

"Discretion" as used in *Wagner*, *Garland*, and *All Phase Roofing* may refer to the deference accorded to a bankruptcy court's fact findings,[4] since § 727(a) litigation typically hinges on those findings.[5] The discussion in *In re Searles*, 317 B.R. 368 (9th Cir. BAP 2004), *aff'd*, 212 F. App'x 589 (9th Cir. 2006) is helpful in this regard:

> Clarification of the standard of review for denials of discharge under § 727 is in order. Although older Ninth Circuit decisions used phrases such as abuse of discretion or "gross" abuse of discretion in review of § 727 decisions, an en banc panel has clarified that such decisions must be construed as prescribing de novo review of legal conclusions, clear error review of factual findings, and de novo review of mixed questions of law and fact. *Murray v. Bammer* (*In re Bammer*), 131 F.3d 788, 792 (9th Cir. 1997) (en banc), *overruling, e.g.*, *Finalco, Inc. v. Roosevelt* (*In re Roosevelt*), 87 F.3d 311, 314, *as amended* 98 F.3d 1169 (9th Cir. 1996) ("gross abuse of discretion"), and *Friedkin v. Sternberg* (*In re Sternberg*), 85 F.3d 1400, 1404 (9th Cir. 1996) ("sound discretion of the bankruptcy court").

317 B.R. at 373. *Searles* and *Bammer* reject the notion that courts exercise discretion when they rule on § 727(a) actions. Rather, courts find facts, make conclusions of law, and apply the facts to the law. "Discretion" is not *le mot juste* to describe how bankruptcy courts decide § 727(a) actions.[6]

---

[4] "[F]actual findings are reviewable only for clear error—in other words, with a serious thumb on the scale for the bankruptcy court." *U.S. Bank N.A. ex rel CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 138 S. Ct. 960, 966 (2018).

[5] Debtor relies on *Connors* for his "discretion" argument. *Connors* cites *Hacker*, which relied on *In re Borron*, 29 B.R. 122, 128 & n.12 (Bankr. W.D. Mo. 1983), which in turn relied on *In re Goff*, 495 F.2d 199, 202 (5th Cir. 1974). *Goff* held that, "Trial courts have wide discretion in determining whether books or records are adequate under the terms of the statute and the facts of each case. This determination should not be disturbed unless there has been a clear abuse of discretion." Thus, *Goff's* improper description of fact-finding leeway as "discretion" apparently morphed into *Connors'* improper statement that bankruptcy courts "have discretion to grant a discharge of debt even if grounds for denial of discharge exist." 273 B.R. at 773.

[6] Furthermore, even if the Court had discretion to grant Debtor a discharge despite § 727(a) grounds for denial, the UST should be given an opportunity to introduce trial evidence and argue that the Court should not exercise its discretion to grant Debtor a discharge. Summary judgment, especially with a skimpy record like the one before the Court, is not an appropriate vehicle for such an exercise of discretion.

The court will follow the Supreme Court's dicta in *Kontrick* that discharge must be denied if an exception under § 727(a) is proven at trial. If the Court has any latitude, it is in fact finding.

## Conclusion

The UST's § 727(a) action is not moot and the Court lacks discretionary authority to disregard the merits of action and grant Debtor a discharge. Debtor may prevail at trial; if he does, the Court will grant him a discharge. Conversely, if Debtor loses at trial the Court will have no choice but to deny the discharge. A separate order denying Debtor's motion will be entered.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: January 22, 2021
Copies to: Counsel of record